IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 23-cr-00070-JB |
| | * | |
| CRAIG D. PERCIAVALLE | * | |
| JOSEPH A. RUNKEL | * | |
| WILLIAM O. ADAMS | * | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR *IN CAMERA* REVIEW AND DISCLOSURE OF GRAND JURY MATERIALS**

The United States of America, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, and Lorinda I. Laryea, Chief of the Fraud Section, Criminal Division, Department of Justice, files this response in opposition to defendants' joint motion for *in camera* review and disclosure of grand jury materials. [Dkt. No. 185 (hereinafter "Motion").] Defendants' Motion is little more than an attempt to relitigate issues raised in their first motion to dismiss the indictment, which is pending before the Court. [Doc. No. 129] To the extent the Motion raises new issues, defendants fail to meet their heavy burden in articulating a particularized need for the disclosure of the grand jury instructions required to pierce the veil of secrecy of the grand jury proceedings, offering instead mere speculation about the legal instructions that may have been given to the grand jury. For these reasons and the reasons articulated below, the United States respectfully submits that the Motion should be denied.

1

I.  **Background**

On March 30, 2023, a federal grand jury in the Southern District of Alabama returned an indictment against defendants Craig D. Perciavalle, Joseph A. Runkel, and William O. Adams (hereinafter "Perciavalle," "Runkel," and "Adams" or collectively "defendants"), charging them with one count of conspiracy to commit wire fraud and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1349, five counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 2, and two counts of wire fraud affecting a financial institution, in violation of 18 U.S.C. §§ 1343, 2.  [Doc. No. 1]

The indictment alleges that, from in or around 2013 through in or around 2016, while serving as executives at Austal USA, a contractor for the United States Navy, defendants agreed and schemed to make and cause others to make false and misleading statements about Austal USA's financial performance on one of its Navy shipbuilding programs (the littoral combat ship or LCS program) and about Austal USA's overall financial condition in order to defraud Austal Limited's shareholders and the investing public.  [*Id.* at ¶ 12]  Defendants did this by intentionally providing false and fraudulent financial information to Austal USA's Board of Directors, Austal USA's independent financial statement auditors, and Austal Limited for dissemination to Austal Limited's shareholders and the investing public.  [*Id.* at ¶ 13]  The scheme to defraud was done to mislead Austal Limited's shareholders and the investing public about Austal USA's financial condition in order to maintain and increase the share price of Austal Limited's stock (through the purchase of shares by shareholders and the

investing public at artificially inflated prices) and unjustly enrich defendants and others through the continued receipt of compensation, stock, and other benefits.  [*Id.* at ¶ 14]

## II. Legal Standard

Grand jury secrecy is governed by Federal Rule of Criminal Procedure 6(e) and by more than a century of jurisprudence holding that the reasons for grand jury secrecy are "compelling," given that the grand jury is a cornerstone of the criminal justice system, holding a "'high place . . . as an instrument of justice.'"  *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) (quoting *Costello v. United States,* 350 U.S. 359, 362 (1956)).  As the Supreme Court explained in *Pittsburgh Plate Glass*, the grand jury is "convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor."  360 U.S. at 400 (internal quotation marks omitted).  "To make public any part of its proceedings would inevitably detract from its efficacy," as "[g]rand jurors would not act with that independence required of an accusatory and inquisitorial body."  *Id.*; see also *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").

Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), this Court may authorize disclosure of the grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  But because the proper functioning of a federal grand

3

jury depends upon the secrecy of the proceedings, the "indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity." *United States v. Procter and Gamble Co.*, 356 U.S. 677, 682, (1958) (internal citations omitted). "To show that the need for disclosure outweighs the need for secrecy, the party seeking disclosure must establish a 'compelling and particularized need for disclosure.'" *United States v. Davis*, 721 F. App'x 856, 860 (11th Cir. 2018) (per curiam) (quoting *United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004)). The party seeking disclosure must show: "(1) the material sought is needed to avoid possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request is designed to cover only necessary material." *United States v. Valencia-Trujillo*, 462 F. App'x 894, 898 (11th Cir. 2012) (citing *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)). "[U]nsubstantiated allegations of grand jury manipulation do not satisfy the particularized need standard." *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985) (internal citations and quotations omitted).

"No grand jury testimony is to be released for the purpose of a fishing expedition or to satisfy an unsupported hope of revelation of useful information." *United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001) (cleaned up). A "district court has 'substantial discretion' in determining whether to compel [] disclosure." *Valencia-Trujillo*, 462 Fed. App'x. at 897 (quoting *Aisenberg*, 358 F.3d at 1348). Further, "a district court need not undertake *in camera* review where . . . a defendant fails to show the existence

4

of a factual basis for his claim." *United States v. Roemmele*, 646 F. App'x 819, 822 (11th Cir. 2016) (citing *United States v. Rodriguez*, 765 F.2d 1546, 1559 (11th Cir. 1985) in holding that the defendant did not establish "a significant need for disclosure of grand jury transcripts" and finding no abuse of discretion where the district court "declin[ed] to sift through the grand jury transcripts in camera").

### III. <u>Discussion</u>

Defendants' motion seeks "*in camera* review and disclosure of any legal instructions, legal guidance, or closing comments provided by the government to the grand jury." [Doc. No. 185 at 1] Such a review or disclosure is not warranted in this case.[1]

Defendants argue that a review is necessary because "the indictment and statements made post-indictment by the government . . . strongly suggest that the grand jury was not afforded accurate instructions with regard to the requirements of the wire fraud statute." *Id.* This argument fails for two reasons. *First*, defendants' arguments are little more than a repackaging of the arguments they have already made in their first motion to dismiss the indictment. [Doc No. 129] Depending on the Court's ruling on that motion, the present Motion will be moot (either because the Court agrees with the United States that the indictment states a legitimate theory of wire fraud or because

---

[1] The United States does not dispute that defendants have narrowly structured their request to cover only the legal instructions. The United States also agrees with defendants that the considerations justifying secrecy are less relevant given the material requested and the prior production of witness grand jury testimony. Nevertheless, defendants still fail to meet their required burden to justify disclosure.

5

the Court dismisses the indictment). *Second*, defendants' arguments are simply speculation about how the grand jury must have been instructed. *See, e.g.*, Motion at 1 ("public filings . . . strongly suggest the grand jury was not afforded accurate instruction") & 2 ("suggest a strong likelihood that the grand jury was misinformed"). Such speculation does not rise to the level of showing particularized need for the grand jury transcripts.

> A. <u>Defendants' Arguments Are Already Pending With the Court Through Their First Motion to Dismiss the Indictment.</u>

Defendants argue that the "public record demonstrates a serious risk that the grand jury voted to indict the defendants on the basis of erroneous instructions stating or suggesting that a person who schemes to deprive another person of money, property, or accurate financial information may have violated the wire fraud statute, even if he did not scheme to obtain the defrauded victim's money or property." [Doc. No. 185 at 5] This is nothing more than a restatement of the legal argument currently before the Court in the first motion to dismiss. As they argue themselves: "the defendants believe that the indictment's insufficiency is a result of the grand jury being misinformed as to the law." [*Id.* at 6]

Defendants' arguments, which are actually arguments about the indictment being "facially invalid," are properly addressed through a motion to dismiss, as they have already done. The proper remedy for these concerns is not to invade the province of the grand jury, particularly before the Court has ruled on their motion to dismiss. Indeed, as courts have repeatedly held, where an indictment is found to be facially valid,

6

defendants cannot show a particularized need for the legal instruction to the grand jury. *See United States v. Apodaca*, 287 F. Supp. 3d 21, 49–50 (D.D.C. 2017) ("Moreover, as discussed above, the indictment has already been deemed facially valid, which undermines [defendant's] theory that the grand jury instructions may have been incomplete."); *United States v. Espy*, 23 F.Supp.2d 1, 10 (D.D.C. 1998) (denying motion for disclosure of grand jury materials where "facially valid indictment undermines any 'particularized need' the alleged grand jury instructions demonstrate for disclosure of the grand jury transcripts"); *United States v. Chalker*, No. 12-0367, 2013 WL 4547754, at *6 & n.7 (E.D. Pa. Aug. 27, 2013) ("Since the Government's Indictment is not based on an improper theory of wire fraud, and is facially valid, Defendant has failed to demonstrate a particularized need for the requested disclosures."); *United States v. Gurry*, No. 16-CR-10343-ADB, 2019 WL 247205, at *3 (D. Mass. Jan. 17, 2019) ("Where the [indictment] is facially valid and Defendants' claims do not justify dismissal of the [indictment], Defendants have not established the requisite particularized need to justify disclosure of the grand jury instructions."); *see also Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased jury, . . . if valid on its face, is enough to call for trial of the charge on the merits.").

The United States relies on and incorporates herein the briefing and arguments already made in its Response in Opposition to the Defendant's First Motion to Dismiss [Doc. No. 131], its two Notices of Supplemental Authority alerting the Court to cases overturning or clarifying the reach of cases defendants heavily relied on in their motions

7

[Docs. No. 166, 183], and at oral argument held by this Court in August 2025. The indictment is facially valid, and the United States theory of wire fraud in this case has not shifted. The indictment alleges a fraudulent inducement theory of wire fraud: that defendants schemed to defraud Austal Limited investors and the investing public of "money or property" by tricking investors into parting with their money or property to purchase shares of Austal Limited at artificially inflated prices. [Doc No. 1 at ¶ 14; Doc. No. 131 at 7-12] In other words, the indictment alleges that defendants fraudulently induced investors into purchasing Austal Limited shares. The Supreme Court confirmed that this conduct is fraud in *Kousisis v. United States*, 605 U.S. 114, 116 (2025) and that "the fraudulent-inducement theory does not 'repackage' the right-to-control theory."

Defendants' reliance on cases where there has been an intervening change or clarification of the law is inapposite for two reasons. *First*, *Ciminelli* and *Kousisis* did not change the law as it pertains to fraudulent inducement wire fraud cases like this one. The elements of wire fraud, identified in the Eleventh Circuit Criminal Pattern Jury Instructions will not change based on the *Kousisis* or *Ciminelli* decisions.[2] *Second*, to the

---

[2] The elements are as follows:

(1) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;
(2) the false pretenses, representations, or promises were about a material fact;
(3) the Defendant acted with the intent to defraud; and
(4) the Defendant transmitted or caused to be transmitted by [wire] [radio] [television] some communication in interstate commerce to help carry out the scheme to defraud

8

extent *Kousisis* clarified the body of case law surrounding wire fraud, it was to the *benefit* of the United States' theory of this case.³ By abrogating *United States v. Takhalov*, 827 F.3d 1307, 1312–1314, the Supreme Court in *Kousisis*, 605 U.S. at 124 (2025) essentially removed an additional economic loss requirement that had been imposed by the Eleventh Circuit:

> In short, the wire fraud statute is agnostic about economic loss. The statute does not so much as mention loss, let alone require it. Instead, a defendant violates Section 1343 by scheming to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off.

Even if improper instruction was given about an "economic loss" requirement, it would have been to the benefit of defendants. And it has long been the law, even before *Kousisis* (and at the time the indictment was returned in this case), that to be convicted of wire fraud, defendants must have schemed to obtain money or property from the victim of the scheme. The cases cited by defendants do not present the same situation as the present case.⁴

---

3   The United States does not address *Ciminelli* because, as repeatedly noted by the United States throughout these proceedings, *Ciminelli* has no bearing on this case. The indictment does not allege, and the United States is not proceeding on, a right-to-control theory.

4   Defendants spend much of their brief arguing about the "obtain" requirement of the wire fraud statute, incorrectly stating that the Government has argued that "there is in fact no requirement that the alleged scheme be one to obtain money or property." [Doc. No. 185 at 11] Not so. As the United States has repeatedly stated in its briefing and at oral argument, the scheme charged in this case was designed to obtain the money or property of Austal Limited shareholders. Where the parties differ is in whether defendants must have sought to obtain the money or property of the shareholders for themselves. As noted at oral argument, there is no such requirement; it is still a violation of the wire fraud statute to scheme to obtain the money and property of the shareholders on behalf of a third party, as is the case in every case of fraud in connection with the shares of a publicly traded company.

B. Defendants' Claims About Improper Grand Jury Instruction Are Speculative and Do Not Satisfy Their Heavy Burden of Showing a Particularized Need.

The indictment is facially valid, and thus defendants have not shown a particularized need for secret grand jury materials. But defendants' arguments are merely speculation that the grand jury was improperly instructed. That is something courts have repeatedly rejected as not meeting the particularized need standard. For example, in *United States v. Stein,* 429 F.Supp.2d 633, 639–40 (S.D.N.Y.2006), a district court in the Southern District of New York rejected defendants' attempts to obtain the legal instructions given to the grand jury on the basis of concern "the government failed to instruct the grand jury on tax law necessary to determine whether the tax shelter transactions actually were illegal, including the economic substance doctrine and certain provisions of the Internal Revenue Code." In making the motion, defendants relied on "public statements by Department of Justice officials regarding the government's theory of the case." *Id.* In rejecting the motion, the court found that defendants "point[ed] to no real evidence that prosecutors improperly instructed the grand jury or that any such failure would have substantially influenced the grand jury's decision to indict," noting that the arguments were "unsupported and speculative [and were] not sufficient to overcome the 'presumption of regularity' afforded to grand jury proceedings." *Id.* (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the

10

grand jury process.").[5]

*Stein* is similar to other cases where courts have rejected attempts to invade the grand jury where there is a facially valid indictment, but defendants disagree about the legal requirements. *See United States v. Phillips*, 2023 WL 6812286, at *1–3 (S.D.N.Y. Oct. 16, 2023) (denying motion for disclosure or *in camera* review of the grand jury instructions, even where the "Government's proposed petit jury instruction on commodities fraud was inaccurate and incomplete" because the changes were "incremental" and thus "any error [in the instructions] would be harmless and would not have prejudiced the Defendant."); *United States v. Tabares*, 2016 WL 11258758, at *11 (N.D. Ga. June 3, 2016), *report and recommendation adopted*, 2017 WL 1944199 (N.D. Ga. May 10, 2017) (denying a motion to dismiss for speculated misconduct before the grand jury where defendants argued "it is 'likely' and that they "believe[ ]" the Government failed to properly advise the grand jury on the law regarding the tax charges in the indictment" because defendants were "engage[d] in nothing more than rank speculation based on their view of the laws and regulations applicable to the tax charges . . . [which] is insufficient to even obtain access to pertinent grand jury records.") (citing *United States v. Burke*, 856 F.2d 1492, 1496 (11th Cir. 1988)); *United States v. Polit*, 2023 WL 6849835, at *6 (S.D. Fla. Aug. 17, 2023), *report and recommendation*

---

[5] The only case the Government could find where a court conducted an *in camera* review on the basis of public statements of the prosecutor involved the prosecutor contradicting the elements of an offense set forth by the Supreme Court in an on-the-record exchange with the judge. *United States v. Ho*, Criminal No. 08-00337 JMS, 2009 WL 2591345, at *4 (D. Haw. Aug. 20, 2009). No such situation exists in this case.

*adopted sub nom. United States v. Faggioni*, 2023 WL 6846742 (S.D. Fla. Oct. 17, 2023) (denying motion for grand jury transcripts or *in camera* review and rejecting defendants' argument that the Government "was required to instruct the grand jury as to the specific foreign offense that satisfied the "specified unlawful activity" element of the [money laundering] charges" because the foreign law was not a "necessary element of the charged offense"); *United States v. Morad*, 2014 WL 68704, at *2 (E.D. La. Jan. 8, 2014) (denying motion for disclosure of grand jury transcripts as speculative where defendant argued that the grand jury must not have been instructed about the definition of "homebound" based on the discovery provided by the government).

So too in this case. Defendants use public statements to speculate about the legal instruction to the grand jury, but ultimately, defendants' arguments are improper attempts to unveil grand jury proceedings for their personal review and determination of what legal instruction they would deem sufficient for a grand jury to return an indictment. This falls far short of satisfying their demanding burden of showing a particularized need for the requested materials.

C. <u>Because Defendants Have Failed to Show a Particularized Need, An *In Camera* Review Is Not Warranted.</u>

Because defendants have failed to demonstrate a particularized need for their own review of this secret information, there is similarly no need or basis for the Court to conduct an *in camera* review. Indeed, the Supreme Court has specifically warned courts against engaging in such oversight. *See United States v. Williams,* 504 U.S. 36, 49 (1992) ("Given the grand jury's operational separateness from its constituting court, it

should come as no surprised that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedures.").

The United States was under no obligation to provide any legal instruction to the grand jury, let alone the level of instruction defendants seem to contemplate in their motion, which would go well beyond the elements of the wire fraud statute. As one district court in the Northern District of Alabama has explained:

> In general, when the grand jury is given legal instructions, prosecutors only provide grand jurors with the law that governs the investigation and which focuses the grand jury's attention on a possible indictment. The instruction need not be as comprehensive as the instruction the trial judge would give. *United States v. Slepicoff* 524 F.2d 1244, 1247 (5th Cir. 1975). Usually simply reading the statutory language setting out the proposed offense is sufficient. *United States v. Warren*, 16 F.3d 247, 252-53 (8th Cir. 1994). As the government correctly observed a "prosecutor is under no obligation to give the grand jury legal instructions." *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988).

*United States v. Schmitz*, 2008 WL 11340277, at *4 (N.D. Ala. May 20, 2008); s*ee also United States v. Battista*, 646 F.2d 237, 242 (6th Cir. 1981) ("However, even if an incorrect instruction was given to the grand jury, which did not occur in the present case, the indictment was valid on its face and was sufficient to require a trial of the indictment on its merits.") (citing *Costello v. United States*, 350 U.S. 359 (1956); *United States v. Slepicoff*, 524 F.2d 1244 (5th Cir. 1975)).

Moreover, the sole purpose of an *in camera* review would be for the Court to evaluate whether there are grounds for dismissal such that defendants should be allowed to review the grand jury materials and then file a motion to dismiss. Even assuming *arguendo* that defendants were correct that the grand jury was not provided

with the exact legal instruction they believe is appropriate, that would not constitute an error, much less one warranting dismissal. As noted above, defendants' speculation about the instructions given to the grand jury in this case are based on legal questions this Court has not yet decided, and the United States was not under any obligation to provide any legal instruction. Should the Court decline to dismiss the indictment, there is no need to conduct a review of the legal instructions given to the grand jury.

## IV. Conclusion

For the reasons stated herein, this Court should decline to engage in a "fishing expedition" and deny defendants' motion for *in camera* review and disclosure of grand jury materials.

Respectfully submitted this 13th day of February 2026.

SEAN P. COSTELLO
UNITED STATES ATTORNEY

LORINDA I. LARYEA
CHIEF, FRAUD SECTION

By: /s/ *Laura Connelly*
Laura Connelly, Acting Assistant Chief
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 514-2000

By: /s/ *Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
United States Attorney's Office for the
Southern District of Alabama
60 South Royal Street, Suite 600
Mobile, Alabama 36602